UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LARRY TAYLOR and REBECCA TAYLOR, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) CASE NO. |
| HOOK-SUPERX, LLC d/b/a CVS PHARMACY, | ) ) ) ) |
| Defendant. | ) ) ) |

# NOTICE OF REMOVAL

# EXHIBIT 2

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MIAMI COUNTY SUPERIOR COURT #1 |
| | ) SS: | |
| COUNTY OF MIAMI | ) | CAUSE NO. 52D01-2208-CT-000617 |
| | | Miami Superior Court 1 |

LARRY TAYLOR and )
REBECCA TAYLOR, )
                                    )
      Plaintiffs, )
                                    )
  v. )
                                    )
HOOK-SUPERX, L.L.C., d/b/a )
CVS PHARMACY, )
                                    )
      Defendants. )
                                    )

## **COMPLAINT FOR DAMAGES**

Plaintiffs, Larry Taylor and Rebecca Taylor, for their cause of action against Defendant, HOOK-SUPERX, L.L.C., d/b/a CVS Pharmacy, state as follows:

1. At all relevant times mentioned herein, Larry Taylor ("Larry") and Rebecca Taylor ("Rebecca") were residents of Peru, Indiana, which is located in Miami County, where they lived together as husband and wife.

2. Upon information and belief, Defendant, HOOK-SUPERX, L.L.C., d/b/a CVS Pharmacy ("CVS"), is a business entity organized and existing under the laws of the State of Delaware.

3. At all relevant times motioned herein, CVS was engaged in the business of providing healthcare and pharmacy services in the State of Indiana.

4. Upon information and belief, the incidents giving rise to this action took place at 2 South Broadway, Peru, Indiana, 46970, which is CVS store number 6545.

5. All acts and omissions of CVS herein alleged were performed or omitted by employees, agents, and representatives of CVS while they were acting within the scope of their employment with CVS.

6. On March 19, 2021, at approximately 7:15 p.m., while driving his vehicle in Peru, Indiana, Larry suffered a non-ST elevation myocardial infarction (NSTEMI) and was found unresponsive on the side of the road.

7. On March 19, 2021, at approximately 7:25 p.m., Lutheran Miami County EMS responded to the scene, resuscitated Larry, and transported him via ambulance to the Emergency Department at Dukes Memorial Hospital, where he underwent numerous examinations and diagnostic testing.

8. On March 20, 2021, Larry transferred to Lutheran Hospital for further medical care and treatment for his multi-vessel coronary artery disease.

9. During his hospitalization at Lutheran Hospital, Larry was evaluated and treated by cardiologist Muzammil Musani, M.D. ("Dr. Musani"), who performed percutaneous coronary intervention ("PCI") with stent implantations in the Left Anterior Coronary Artery ("LAD") and the LAD Diagonal Branch.

10. Following this procedure, Dr. Musani prescribed numerous medications for Larry, including Dual Anti-Platelet Therapy ("DAPT") consisting of Clopidogrel, which is sold under the brand name Plavix. Dr. Musani also planned on performing a staged PCI on the residual coronary stenoses and scheduled Larry for a follow-up procedure on April 16, 2021.

11. Dr. Musani specifically prescribed Plavix to prevent further blood clots and keep Larry's blood vessels open following the PCI.

12. The prescription medications ordered by Dr. Musani were called into the CVS location mentioned above and were processed and filled by either Jessica M. Dyson, PharmD, or Nancy J. Stephens, PharmD ("the Pharmacist").

13. On March 24, 2021, Larry discharged from Lutheran Hospital.

14. On March 24, 2021, Larry's daughter, Cindy Briles ("Cindy"), went to CVS to pick up the prescription medications ordered by Dr. Musani for her father. These medications were ready and waiting for Cindy in a bag when she arrived at CVS, and a pharmacy technician named Shaina B. (last name currently unknown) provided the medications to Cindy and took payment on behalf of CVS.

15. After returning home and inspecting the medications, Cindy noticed that two of the prescription medication bottles contained identical labels, but the pills inside were different colors, shapes, and sizes. Specifically, these two bottles were labeled as containing Atorvastatin, but the pills inside were noticeably different; one bottle contained white pills and another bottle contained pink pills. Because the label on both bottles indicated that Atorvastatin was a white pill, Cindy suspected there was an error with the unknown pink pills.

16. Confused, Cindy called CVS and explained the situation to the same pharmacy technician that she previously interacted with at the store (i.e. Shaina B.). Cindy also requested clarification and instructions regarding the medication error.

17. During this phone call, Shaina B. acknowledged that CVS errored and mislabeled a prescription medication in the bag that was previously provided to Cindy. Shaina B. also informed Cindy that CVS had been "very busy" earlier that evening, which likely caused the error. Ultimately, Shaina B. informed Cindy that CVS mistakenly placed another patient's medication in the bag with Larry's medications, which was the mislabeled bottle containing the pink pills. Shaina B. instructed Cindy that Larry could take his appropriately labeled Atorvastatin medication (i.e. the white pills), and Shaina B. requested that Cindy return the mislabeled medication to CVS (i.e. the pink pills).

18. When Cindy went back to CVS to return the mislabeled medication, the Pharmacist examined the label, the contents of the bottle, and then apologized for the error.

19. CVS and the Pharmacist knew the contents of the mislabeled bottle contained Plavix, but they never informed Larry or his family members, and Larry never received the Plavix that was ordered by Dr. Musani.

20. While at home, Larry took all the medications that Cindy brought home from CVS according to the instructions on the bottles.

21. On April 16, 2021, Mr. Taylor returned to Dr. Musani for another PCI, and he underwent repeat coronary arteriography, which showed that his LAD Diagonal Branch was now 100% occluded despite the prior stenting procedure.

22. These findings prompted Dr. Musani to immediately question whether Larry had been taking Plavix as prescribed.

23. Dr. Musani informed Larry of the consequences of not receiving Plavix, which included, but was not limited to, the following: (1) Larry's LAD Diagonal Branch was now completely occluded and could not be reopened or re-stented; (2) Larry's risk of suffering a massive heart attack in the future had greatly increased; and (3) Larry's heart was permanently damaged.

24. Thereafter, Cindy went home and reviewed the prescription medications that Larry received from CVS on March 24, 2021. Cindy confirmed the medications provided by CVS did not include Plavix.

25. Larry's wife, Rebecca, contacted CVS and asked whether it received Larry's prescription for Plavix on March 24, 2021. During this phone call, CVS informed Rebecca that an employee had forgotten to put Larry's Plavix in the bag with his other medications, and the Plavix had been sitting at CVS since March 24, 2021.

26. Larry did not receive Plavix as a result of CVS's negligence in filling and dispensing his prescription medications.

27. In providing healthcare and pharmacy services to Larry, CVS and its skilled agents, employees, and personnel, while acting within their scope of the agency and employment relationship with CVS, acted negligently and failed to treat Larry in compliance with reasonable and accepted standards of healthcare and pharmacy services.

28. CVS's negligence directly and proximately caused permanent injuries to Larry.

29. As a direct and proximate result of CVS's negligence, Larry sustained permanent heart damage and now has an increased risk of recurrent silent ischemic events in the future.

30. As a direct and proximate result of CVS's negligence, Larry requires closer cardiology monitoring and follow-up with ongoing guideline directed medical therapy and yearly non-invasive ischemic evaluations with imaging stress studies.

31. As a direct and proximate result of CVS's negligence, Larry now has a myocardial scar in the distribution of the LAD Diagonal Branch that creates a risk for future ischemic rhythm abnormalities, including the potential for sudden cardiac death.

32. As a direct and proximate result of CVS's negligence, Plaintiffs incurred medical and other related expenses, attorney fees, litigation costs, and/or intangible damages of a nature as to require compensation.

33. As a direct and proximate result of CVS's negligence, Plaintiffs suffered pain, emotional distress, mental anguish, and loss of enjoyment of life.

34. Plaintiffs each make a claim for negligent infliction of emotional distress.

35. Plaintiffs seek pre-judgment interest.

36. Plaintiffs in no way contributed to the cause of the negligence or the damages sustained.

WHEREFORE, Plaintiffs, Larry Taylor and Rebecca Taylor, pray for damages against Defendant, HOOK-SUPERX, L.L.C., d/b/a CVS Pharmacy, in an amount sufficient to compensate them for their damages, the cost of this action, and for all other just and proper relief.

Respectfully submitted,

CHRISTIE FARRELL LEE & BELL, P.C.

*/s/ Christopher D. Simpkins*
Tina M. Bell (Attorney No. 21169-02)
Christopher D. Simpkins (Attorney No. 28779-49)
951 N. Delaware Street
Indianapolis, Indiana 46202
Phone: (317) 488-5500 | Fax: (317) 488-5510
E-mail: tina@cflblaw.com | chris@cflblaw.com

## JURY DEMAND

Plaintiffs, Larry Taylor and Rebecca Taylor, by counsel, hereby demand a trial by jury.

Respectfully submitted,

CHRISTIE FARRELL LEE & BELL, P.C.

*/s/ Christopher D. Simpkins*
Tina M. Bell (Attorney No. 21169-02)
Christopher D. Simpkins (Attorney No. 28779-49)
951 N. Delaware Street
Indianapolis, Indiana 46202
Phone: (317) 488-5500 | Fax: (317) 488-5510
E-mail: tina@cflblaw.com | chris@cflblaw.com